UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| In re | |
|---|---|
| ERIC O'CONNELL | Chapter 13 |
| | Case No. 04-18415-RS |
| Debtor | |

MEMORANDUM OF DECISION AND ORDER
REGARDING PLAN CONFIRMATION

This matter is before the Court on the objection of Claire L. Rich, as holder of an attachment securing an unliquidated tort claim, to confirmation of the Chapter 13 plan of Debtor Eric O'Connell. For the reasons set forth below, the Court will defer resolution of the objection to confirmation pending determination of the amount of Rich's claim and the extent of the judicial lien securing it.

Facts and Procedural History

In March 1999, Rich sustained injuries when she (or the vehicle she was traveling in—the record is unclear) was struck by an automobile that O'Connell owned and was then operating. Rich sued O'Connell in Massachusetts state court on account of her injuries, costs, and suffering, and, in that action, obtained a $500,000 prejudgment attachment of O'Connell's property. On October 15, 2004, on the eve of trial in that action, O'Connell filed a petition under Chapter 13 of the Bankruptcy Code, thus commencing the present bankruptcy case and staying the trial in the state court action. Though Rich does not appear to have filed a proof of claim in this case, she estimates that her claim against O'Connell will exceed $1 million (much of it not covered by insurance), and she contends that her claim is secured to the extent of her attachment, $500,000. Her claim has not yet been liquidated or otherwise adjudicated, either in the state court

proceeding or in the bankruptcy case. In the schedules he filed in this case, O'Connell scheduled Rich's claim as disputed as to liability and undetermined as to amount; he reserves his right to contend that he is not liable at all.

Rich's attachment attaches to the Debtor's interest in his home. O'Connell and his wife, who is neither a joint debtor in this case nor a defendant in the state court action, own their home in a Massachusetts tenancy by the entirety. O'Connell values the home at $525,000. The home is subject to a $157,755 mortgage, and O'Connell's equity in the home is protected by an estate of homestead under the Massachusetts homestead statute, G.L. c. 188. On the basis of the estate of homestead, the Debtor has claimed his interest in the home as exempt in this case to the extent of $300,000.[1] No objection has been filed to the claim of exemption, and the time to object has passed.

O'Connell has proposed a plan that, among other things, treats Rich's claim as unsecured and without priority. The plan does not specifically mention Rich or her claim at all, but it makes no provision for that claim as either a secured claim or a priority claim. Therefore, if the claim is to be paid at all under the plan, it must be as a general unsecured claim. The plan, which proposes to pay general unsecured creditors a dividend of ten percent of their claims, states that nonpriority unsecured claims total $101,146.28, but it does not identify the holders of the claims comprising that total nor purport to classify, quantify, or allow or disallow any particular claim.[2]

---

[1] In an amendment to G.L. c. 188 that took effect on October 26, 2004, the amount of the exemption was increased to $500,000. However, Rich recorded her attachment, and O'Connell commenced this case, before the effective date of the increase. The parties agree that the Debtor's exemption is limited to $300,000.

[2] The Debtor's Schedule F lists only four unsecured claims. Three are quantified and total $1,146.28. The fourth, Rich's claim, is not quantified. By quantifying unsecured claims in his plan in the total amount of $101,146.28, the Debtor is essentially making provision to treat it as an unsecured claim up to an allowed amount of $100,000. However, nothing in the plan

2

The plan commits O'Connell to paying $337.32 a month for thirty-six months, for a total distribution to his unsecured non-priority creditors through the Chapter 13 Trustee of approximately $10,000.

**Positions of the Parties**

Rich assumes that she holds a secured claim of not less than $500,000 and from that assumption attacks the plan as unconfirmable on three grounds. First, O'Connell must treat her claim as secured, but he does not have the resources to pay a secured claim of $500,000 (or even much less), and Rich will not consent to any treatment that does not give her the full value of her secured claim. 11 U.S.C. § 1325(a)(5) and (a)(6). Second, although O'Connell may succeed in avoiding much of her attachment by a motion under 11 U.S.C. § 522(f) to avoid her lien as impairing his homestead exemption,[3] she cannot so avoid the *entire* lien; if § 522(f) is properly applied—Rich maintains that this requires valuing O'Connell's interest in the marital home at one hundred percent of the home's value—approximately $67,000 of the equity would remain subject to Rich's lien, and O'Connell cannot afford to pay a secured claim even in this reduced amount. Third, if O'Connell should succeed in avoiding some or all of her attachment under 11 U.S.C. § 522(f), her unsecured claim would increase above the Chapter 13 eligibility limit, and O'Connell would thus forfeit his eligibility for relief under Chapter 13.[4] 11 U.S.C. § 109(e)

---

would constitute a disposition of Rich's claim or prevent the Debtor from objecting to the claim or otherwise challenging it outside of the plan.

[3] The Debtor has not yet filed such a motion.

[4] Rich does not explain why her tort claim should be counted toward the § 109(e) limit of debts that, "on the date of the filing of the petition," were "noncontingent, liquidated, unsecured debts."

3

(limiting Chapter 13 eligibility to individuals who, among other things, owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675).

O'Connell responds that his plan can be confirmed if Rich's claim is entirely unsecured and does not exceed $100,000. He argues that her claim should be treated as unsecured because, under § 522(f), as O'Connell argues it should be applied—that is, by valuing his interest in the marital home at only fifty percent of the home's value—Rich's lien may be avoided in its entirety. He also notes that the extent of his debt is not settled: he disputes liability and the extent of Rich's injuries and damages, and he has raised the defense of contributory negligence. When liability is finally adjudicated and quantified, his unsecured debt to Rich may well be less than the $100,000 that his present plan is structured to pay at ten percent; and avoidance of Rich's lien under § 522(f) would not necessarily leave an unsecured debt of such magnitude that he would be ineligible for relief under Chapter 13.

### Discussion

Rich's objections to the Debtor's plan hinge entirely on two issues that are as yet undetermined: (1) the amount of her claim and (2) the extent to which that claim (assuming she has one at all) is deemed a secured claim. The latter depends entirely on the extent to which her judicial lien survives avoidance under the motion under § 522(f) to avoid Rich's judicial lien that O'Connell intends to bring in aid of his plan. Rich argues that under no possible resolution of these two issues could the plan be confirmed. The purpose of the present inquiry is not to resolve the two claim-related issues but solely to determine whether the plan can be confirmed under any possible resolution of those issues.

4

1. **Secured Claim**

The plan makes no provision for any secured claim that Rich might ultimately be deemed to hold. Therefore, if Rich were determined to have a secured claim in any amount, confirmation of the present plan would have to be denied. Could Rich be determined *not* to have a secured claim? The answer is yes, under two possible scenarios.

First, the state court could yet determine that O'Connell has no liability to Rich at all. Liability simply has not yet been determined, and O'Connell has not conceded the issue. Without liability, there would be no claim, secured or otherwise.

Second, on a motion by the Debtor under § 522(f) to avoid Rich's judicial lien, this Court could *conceivably* avoid her lien in its entirety.[5] I emphasize the word "conceivably": no motion to avoid judicial lien has yet been filed; the relevant numbers are still entirely speculative; the parties have adduced no evidence; and I remain quite unsettled as to precisely how to value one spouse's interest in property held with the nondebtor spouse in a Massachusetts tenancy by the entirety.[6] If the lien were avoided in its entirety under § 522(f), the plan could not be faulted for

---

[5] I am assuming in this scenario that Rich succeeds in obtaining judgment against the Debtor.

[6] The prevailing view holds that, when determining the extent to which, under 11 U.S.C. § 522(f)(2)(A), a judicial lien is deemed to impair a Massachusetts homestead exemption in respect of property held in a tenancy by the entirety in the Chapter 13 case of a debtor-spouse, the Court must ascribe to the debtor the entirety of the value of the property claimed as exempt, and not merely some fractional portion or some future assessment thereof. *See In re Snyder,* 249 B.R. 40, 46 (1st Cir. BAP 2000) (debtor's interest in tenancy by the entirety property for purposes of § 522(f) should be valued at 100 percent). *See also In re Maloni,* 282 B.R. 727, 732 (1st Cir. BAP 2002) (affirming Judge Boroff); *In re Garran,* 274 B.R. 570, 575 (Bankr. D. Mass. 2002); and *In re Strandberg,* 253 B.R. 584, 588 (Bankr. D. R.I. 2000) (construing Rhode Island homestead law comparable to Massachusetts). This position employs a bright line that is easy to follow and apply. However, because it values one spouse's interest in a tenancy by the entirety without regard for how the tenancy is terminated—something that is simply impossible under Massachusetts law—it seems not entirely faithful to Massachusetts law. In effect, this uses against the debtor the legal fiction that two spouses can each have a one-hundred percent interest

5

failing to provide for a secured claim.

Accordingly, I cannot find at this juncture that Rich will necessarily have an allowed secured claim or, consequently, that the plan is necessarily deficient in failing to provide one. The adequacy of the plan with respect to Rich's judicial lien can be determined only after (a) adjudication of liability and, if O'Connell is adjudged liable in some amount, (b) adjudication of O'Connell's motion under § 522(f) to avoid the resulting judicial lien.

### 2. Unsecured Claim

Rich contends that her unsecured claim will be so large, especially if her lien is avoided but perhaps even if it is not, that (1) the allowed unsecured debt will greatly exceed the $100,000 on which the plan proposes to pay a ten percent dividend, and therefore the plan will be inadequate to pay all the allowed unsecured debt, and (2) O'Connell will be ineligible under 11 U.S.C. § 109(e) to be a debtor under Chapter 13. Both objections turn on whether and in what amount O'Connell is adjudged to be liable to Rich. Because liability could yet be less than $100,000, it is possible that neither of these objections would have merit. Accordingly, I cannot find that the plan's provision for Rich's unsecured claim is necessarily deficient.

There has been no determination of liability or assessment of damages. Accordingly, unless O'Connell employs, for purposes of plan confirmation in Chapter 13, the § 502(c) claims

---

in the same asset. This fiction serves a salutary purpose in state property law when viewed within the web of rights and relations—including those wherein the method of termination finally determines the extent of a spouses interest—that constitute the form of ownership know as tenancy by the entirety. Removed from that context, as it is in *Snyder*, the fiction may not be a fair representation of the real extent of one spouse's interest vis-a vis the other in the real property. I find it ironic as well that a form of ownership intended to strengthen the rights of a married couple as against creditors of either should, when it interacts with a bankruptcy provision intended to enhance a debtor's fresh start (the avoidance power under § 522(f)), serve to *weaken* the position of both the debtor and the married couple.

estimation rubric or fashions a separate classification for Rich's claim in an amended plan, the Court must defer consideration of any plan, including that pending; the contingent and unliquidated status of Rich's claim renders any other outcome simply too conjectural.

## ORDER

For the reasons set forth above, the Court hereby defers adjudication of the proposed plan, and of the objection of Claire Rich to its confirmation, pending a final determination of Rich's claim by judicial action, settlement, or otherwise.

Date: *April 14, 2005*

*Robert Somma*
Robert Somma
United States Bankruptcy Judge

cc: Alexander L. Cataldo, Esq., for Claire Rich
    Thomas J. Freda, Esq., for Eric O'Connell
    Doreen Solomon, Esq., Chapter 13 Trustee